IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| HELEN OF TROY LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 6:21-cv-00468 |
| | § | |
| IKEA US RETAIL LLC and | § | |
| IKEA NORTH AMERICA SERVICES, LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT

Helen of Troy Limited ("Helen of Troy" or "Plaintiff") files this Complaint for an injunction and damages against IKEA US Retail LLC and IKEA North America Services, LLC (collectively, "Defendants").  In support of its Complaint, Helen of Troy alleges as follows:

## THE PARTIES

1.      Plaintiff Helen of Troy is a corporation organized and existing under the laws of Barbados.  Helen of Troy is part of a larger group of "Helen of Troy" companies that was originally founded in El Paso, Texas in 1968.  The group of Helen of Troy companies maintains a U.S. headquarters at 1 Helen of Troy Plaza, El Paso, Texas 79912.  Helen of Troy owns the patents and trade dress rights that are at issue here.  Helen of Troy uses its patented technology and its trade dress in its own avocado slicer product (the "OXO Avocado Slicer") under the "OXO Good Grips®" and "OXO Softworks®" brands.

2.      Upon information and belief, IKEA US Retail LLC is a limited liability company organized and existing under the laws of Virginia with a principal place of business in Conshohocken, Pennsylvania.  Upon information and belief, IKEA US Retail LLC owns and/or

1

operates physical retail store locations in Texas, including in this judicial district, where it offers for sale and sells household products, including avocado slicers.

3.     Upon information and belief, IKEA North America Services, LLC is a limited liability company organized and existing under the laws of Virginia with a principal place of business in Conshohocken, Pennsylvania.  Upon information and belief, IKEA North America Services, LLC owns and/or operates the website www.ikea.com/us/en, through which household products, including avocado slicers, are offered for sale and sold across the United States and in this judicial district.

4.     Upon information and belief, IKEA US Retail LLC and IKEA North America Services, LLC are wholly-owned by a common parent company.  Upon information and belief, both IKEA US Retail LLC and IKEA North America Services, LLC hold themselves out as "IKEA."

## NATURE OF THE ACTION

5.     This is a civil action for patent infringement, trade dress infringement, trade dress dilution, unfair competition, and unjust enrichment.  This action arises under the Patent Act, 35 U.S.C. § 271 *et seq*., the Lanham Act, 15 U.S.C. § 1125 *et seq*., the Texas Business and Commerce Code § 16 *et seq.*, and common law.

## JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction over the federal law claims under 35 U.S.C. § 271 *et. seq*. and 15 U.S.C. § 1125 *et seq.* pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over the state statutory and common law claims in this action pursuant to 28 U.S.C. § 1367(a) because the state statutory and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     This Court has personal jurisdiction over IKEA US Retail LLC because it has minimum contacts with Texas and this judicial district, it has purposely directed activities toward Texas and this judicial district that give rise to the causes of action herein, and it has purposefully availed itself of the privileges of conducting business in Texas and this judicial district.  For example, upon information and belief, IKEA US Retail LLC operates multiple store locations in Texas, including in this district, where it has sold and continues to offer for sale the "LÄTTSKALAD" avocado slicers giving rise to the causes of action herein.  Moreover, IKEA US Retail LLC's tortious acts with respect to the LÄTTSKALAD have foreseeably caused direct harm to Helen of Troy in Texas and this district, as Defendants and Helen of Troy compete for the same customers in Texas and this district.  Additionally, IKEA US Retail LLC is registered to do business in the State of Texas, regularly does or solicits business in Texas, and derives substantial revenue from goods and services provided to customers in Texas.  The exercise of jurisdiction over the defendant would thus be fair and reasonable and would not offend traditional notions of fair play and substantial justice.

8.     This Court has personal jurisdiction over IKEA North America Services, LLC because it has minimum contacts with Texas and this judicial district, it has purposely directed activities toward Texas and this judicial district that give rise to the causes of action herein, and it has purposefully availed itself of the privileges of conducting business in Texas and this judicial district.  For example, upon information and belief, IKEA North America Services, LLC operates the interactive website www.ikea.com/us/en/, and associated websites, through which it has sold and continues to sell the LÄTTSKALAD avocado slicers giving rise to the causes of action herein.  Upon information and belief, customers in this district have actually purchased the LÄTTSKALAD through www.ikea.com/us/en.  Moreover, IKEA North America Services, LLC's

tortious acts with respect to the LÄTTSKALAD have foreseeably caused direct harm to Helen of Troy in Texas and this district, as Defendants and Helen of Troy compete for the same customers in Texas and this district.  Additionally, IKEA North America Services, LLC is registered to do business in the State of Texas, regularly does or solicits business in Texas, and derives substantial revenue from goods and services provided to customers in Texas.  The exercise of jurisdiction over the defendant would thus be fair and reasonable and would not offend traditional notions of fair play and substantial justice.

9.      Venue is proper against IKEA US Retail LLC under at least 28 U.S.C. § 1400 because it has committed acts of patent infringement in this district and has a regular and established place of business in this district, including at 1 Ikea Way, Round Rock, Texas 78665 and at 1000 IKEA RBFCU Parkway, Live Oak, Texas 78233.  Venue is also proper against IKEA US Retail LLC under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.  Additionally, venue is proper against IKEA US Retail LLC under 28 U.S.C. § 1391(b)(1) because it is subject to the Court's personal jurisdiction in this judicial district.

10.     Venue is proper against IKEA North America Services, LLC under at least 28 U.S.C. § 1400 because it has committed acts of patent infringement in this district and has a regular and established place of business in this district, including at 1 Ikea Way, Round Rock, Texas 78665 and at 1000 IKEA RBFCU Parkway, Live Oak, Texas 78233.  For example, IKEA North America Services, LLC operates the website www.ikea.com/us/en, through which customers can order and pay for products and choose to pick them up at IKEA stores in this district, such as the IKEA store located at 1000 IKEA RBFCU Parkway, Live Oak, Texas 78233.  Moreover, upon information and belief, the owner of the IKEA stores in this district is an affiliate of IKEA North

America Services, LLC that also holds itself out as "IKEA."  The Terms and Conditions on IKEA North America Services, LLC's website likewise refers to the various IKEA entities collectively as "IKEA."  https://www.ikea.com/us/en/customer-service/terms-conditions/ ("The Services are owned and operated by IKEA North America Services and its parents, affiliates, and/or franchisors (collectively, 'IKEA,' 'we,' 'our,' or 'us').") (accessed April 27, 2021).  Further, upon information and belief, both IKEA North America Services, LLC and IKEA US Retail LLC share a common business address.  Venue is also proper against IKEA North America Services, LLC under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.  Additionally, venue is proper against IKEA North America Services, LLC under 28 U.S.C. § 1391(b)(1) because it is subject to the Court's personal jurisdiction in this judicial district.

11.     Moreover, this is a convenient venue because documents related to, and persons with knowledge of, the allegations described herein are located in this district.  For example, documents related to, and persons with knowledge of, Helen of Troy's patents and trade dress are located in El Paso, Texas.

12.     To the extent venue is not deemed proper for any particular claim standing alone, pendent venue is proper for any such claim because all claims alleged herein arise out of a common nucleus of operative facts.

13.     Both Defendants may be served by serving their registered agent:

CT Corporation System
1999 Bryan St., Ste. 900
Dallas, TX  75201-3136

## FACTUAL BACKGROUND

### *Helen of Troy's Avocado-Slicing Technology and OXO Product*

14.     Helen of Troy is a leading and highly regarded distributor of a wide range of household and personal care products, including products that it markets and sells under its "OXO"

brand.  For years, Helen of Troy has been engaged in the design, development, and sale of a unique, distinctive, and innovative hand-held avocado-slicing product known as the "OXO Avocado Slicer" that is designed to be used to (1) cut open an avocado, (2) remove the seed (or "pit") of the avocado, and (3) slice the avocado into pieces.  The OXO Avocado Slicer is and has been marketed and sold under Helen of Troy's "OXO Good Grips®" and "OXO SoftWorks®" brands.

15.     Helen of Troy is and has been marketing and selling the OXO Avocado Slicer in Texas and throughout the United States in interstate commerce continuously since 2012.  For example, Helen of Troy's OXO Avocado Slicer is sold at brick-and-mortar locations in Texas and across the Unites States, such as at Bed Bath & Beyond, Kohl's, Macy's, Target, Ace Hardware, Sur La Table, and The Container Store, as well as other well-known brick-and-mortar locations. Helen of Troy also markets and sells the OXO Avocado Slicer across the United States and Texas through online marketplaces, such as OXO.com, Amazon.com, Walmart.com, BakeDeco.com, WebstaurantStore.com, and Boxed.com.

16.     Helen of Troy's OXO Avocado Slicer and its operation are shown below in **Illustration 1**:






17.     As explained in the description of the OXO Avocado Slicer on OXO.com, "[t]he plastic blade smoothly cuts through avocado skin and fruit, yet isn't sharp to the touch.  The pitting tool quickly removes pits with a simple twist.  The fan blade cuts fruit into perfect slices and scoops them out for serving."   https://www.oxo.com/3-in-1-avocado-slicer-901.html (accessed April 8, 2021).

18.     Helen of Troy has extensively and continuously promoted and used its OXO Avocado Slicer design for years in the United States and in Texas, and, as explained in more detail below, has acquired patent and trade dress rights in its design.

### *Helen of Troy's '799 Patent*

19.     Helen of Troy owns the entire right, title, and interest in U.S. Patent No. 8,726,799 ("the '799 Patent"), which is titled "Avocado Pitting Device" and names Mark Prommel, Todd Brunner, and Kevin O'Leary as inventors.  The application that issued as the '799 Patent was filed on August 23, 2011, and the U.S. Patent and Trademark Office ("USPTO") issued the '799 Patent on May 20, 2014.   A true and correct copy of the '799 Patent is attached as **Exhibit 1**.

20.     Figures 3 and 4 of the '799 Patent are shown below in **Illustration 2**:





21.     As further shown by **Illustration 1** above, Helen of Troy's OXO Avocado Slicer is encompassed by at least claim 16 of the '799 Patent because the OXO Avocado Slicer is "[a]n avocado pitting device" that includes "a handle having a first end portion and an opposite second

8

end portion," "a first blade member coupled to the first end section of the handle, the first blade member configured to cut open the avocado to expose a pit of an avocado," "a second blade member coupled to the second end portion of the handle, the second blade member configured to slice the avocado," and "at least two spaced apart engagement members interposed between the first and second blade members, the engagement members projecting outwardly from the handle and toward each other such that the engagement members define a space for receiving the avocado pit, the engagement members being configured to pierce the avocado pit and retain the avocado pit against the handle allowing the pit to be removed from the avocado."

### *Helen of Troy's '488 Patent*

22.     Helen of Troy also owns the entire right, title, and interest in U.S. Design Patent No. D675,488 ("the '488 Patent"), which is titled "Fruit Preparation Tool" and names Mark Prommel, Todd Brunner, and Kevin O'Leary as inventors.  The application that issued as the '488 Patent was filed on November 30, 2011, and the USPTO issued the '488 Patent on February 5, 2013.  A true and correct copy of the '488 Patent is attached as **Exhibit 2**.

23.     Figure 2 (right) and Figure 7 (left) of the '488 Patent depict the patented design and are shown below in **Illustration 3**:



24.     As shown by **Illustration 1** and **Illustration 3**, and further by **Exhibit 2**, Helen of Troy's OXO Avocado Slicer is encompassed by the claim of the '488 Patent.

### *Helen of Troy's Trade Dress*

25.     Helen of Troy has acquired trade dress rights under the Lanham Act, as well as under state statutory and common law, in the overall look, design, arrangement, and appearance of the OXO Avocado Slicer, shown for example in **Illustration 1** above (such rights referred to collectively herein as "Helen of Troy's Trade Dress").  Helen of Troy's Trade Dress includes the appearance and placement of the curves, tapers, and lines in the OXO Avocado Slicer product; the appearance of the profile of the product; the appearance of the handle and grip of the product; the appearance of the blade of the product; the appearance of the slicing mechanism of the product; the appearance of the seed/pit-removal mechanism of the product; and the overall ornamental design of the combination of these features.  Such non-functional design elements are not essential to the use or purpose of the products, do not affect its cost or quality, and are not the reason the

product works.  Moreover, the ornamental aspects of the arrangement and combinations of the features are arbitrary and non-functional.

26.     For years, Helen of Troy has invested significant resources in the design, development, advertising, and marketing of the OXO Avocado Slicer, which has occurred in Texas and throughout the United States, including in in-store displays and on the Internet.  Furthermore, Helen of Troy has sold substantial quantities of the OXO Avocado Slicer product in Texas and throughout the United States.

27.     In connection with marketing and selling its OXO Avocado Slicer, Helen of Troy has extensively used, displayed, and advertised the non-functional features of the design of the OXO Avocado Slicer that comprise Helen of Troy's Trade Dress.  These features are distinctive and identify to consumers that the origin of the OXO Avocado Slicer is Helen of Troy.  In the minds of the public, the primary significance of these non-functional and distinctive features is to identify the source of the product, and Helen of Troy's Trade Dress has acquired secondary meaning.  The distinctive and non-functional features further identify that the product is reliable and of the high quality associated with Helen of Troy.

28.     Additionally, Helen of Troy's Trade Dress has become famous and a well-known indicator of the origin and quality of Helen of Troy's OXO Avocado Slicer.  As explained above, Helen of Troy has used, promoted, marketed, and made significant sales of its OXO Avocado Slicer.  Moreover, the OXO Avocado Slicer has specifically been sold and offered for sale throughout the United States in many well-known brick-and-mortar stores, such as Target, and online outlets, such as Amazon.com.  Helen of Troy's OXO Avocado Slicer has also garnered unsolicited media praise.  For example, a review of the product by Business Insider states that "[t]he design is simply ingenious."   https://www.businessinsider.com/oxo-avocado-slicer-pitter-

kitchen-tool-review (published Feb. 7, 2020; accessed April 13, 2021). It was also named the "top pick" for "Best Avocado Slicers" by technobuffalo. https://www.technobuffalo.com/best-avocado-slicers (published Dec. 7, 2020; accessed April 13, 2021). *See also* https://www.eonline.com/news/1181097/this-s10-avocado-slicer-has-3-417-5-star-amazon-reviews (published Feb. 18, 2021; accessed April 13, 2021) (noting that the OXO Avocado slicer has "16,000+ 5-Star Amazon Reviews"); https://www.foodandwine.com/cooking-techniques/best-avocado-tool-expert-test (published Dec. 16, 2019; accessed April 13, 2021); https://www.cranberryislandkitchen.com/best-avocado-slicer-and-pitter/ (updated April 5, 2021; accessed April 13, 2021); https://www.today.com/food/oxo-amazon-avocado-tool-review-t127247 (published April 18, 2018; accessed April 13, 2021). Upon information and belief, Helen of Troy's Trade Dress is recognized by consumers across the United States as exclusively identified with Helen of Troy.

29.    As a result of Helen of Troy's exclusive, continuous, and substantial use, as well as its extensive advertising, sales, and promotion of its Trade Dress and the publicity, praise, and attention that has been paid to the OXO Avocado Slicer bearing Helen of Troy's Trade Dress, the Trade Dress has acquired valuable goodwill, substantial secondary meaning, and has become famous in the United States and Texas. Accordingly, Helen of Troy owns common law and statutory trade dress rights in the ornamental design and appearance of the OXO Avocado Slicer.

### *Defendants' Wrongful Conduct*

30.    The Defendants have purposefully offered for sale, sold, distributed, imported, advertised, marketed, and/or promoted, and continue to offer for sale, sell, distribute, import, advertise, market, and/or promote a household product known as the "LÄTTSKALAD" avocado slicer ("the Accused Product") that is confusingly similar to, and dilutes, Helen of Troy's Trade Dress and practices inventions claimed in the '799 and '499 Patents. The LÄTTSKALAD

competes directly with, and, upon information and belief, is of lower quality than, Helen of Troy's

OXO Avocado Slicer product.

31.     The LÄTTSKALAD and its operation are shown below in **Illustration 4**:



https://www.ikea.com/us/en/p/laettskalad-avocado-slicer-green-50464610/ (accessed April 8,

2021); https://www.amazon.co.uk/IKEA-504-646-10-Lattskalad-Avocado-

Slicer/dp/B085HZNPFL (accessed April 9, 2021).

32.     According to Ikea.com, the LÄTTSKALAD is designed to "divide avocados,

remove the seed, slice and scoop out the contents."  https://www.ikea.com/us/en/p/laettskalad-

avocado-slicer-green-50464610/ (accessed April 8, 2021).  The same website further explains that

"[a] quick twist of the stainless steel pitter is all that is needed to remove the avocado seed."  *Id.*

33.    The confusing similarity between the LÄTTSKALAD Avocado Slicer (left) and

Helen of Troy's OXO Avocado Slicer (right) is demonstrated, for example, in **Illustration 5** below:

 

34.    Upon information and belief, Defendants or their affiliates import the

LÄTTSKALAD into the United States and distribute it to retail stores across the country, including

to stores in the Western District of Texas that are operated by Defendant IKEA US Retail LLC.  At

such stores, the LÄTTSKALAD is advertised, promoted, offered for sale, and sold.   Upon

information and belief, customers have actually purchased the LÄTTSKALAD from one or more

IKEA stores operated by IKEA US Retail LLC in this judicial district.

35.    Moreover, the LÄTTSKALAD is advertised, promoted, offered for sale, sold, and

transported to customers across the United States, including throughout the Western District of

Texas,  through  the  website  www.ikea.com/us/en  that  is  operated  by  Defendant  IKEA  North

America Services, LLC.  Upon information and belief, Defendant IKEA North America Services,

LLC has actually done business with customers in, and with residents of, this judicial district

through its website.  For example, upon information and belief, customers in this judicial district

14

have actually purchased the LÄTTSKALAD from www.ikea.com/us/en and have had the LÄTTSKALAD shipped to this judicial district.  Furthermore, www.ikea.com/us/en is highly interactive.  For instance, the website allows online customers to create and store an online profile, purchase products (e.g., the LÄTTSKALAD), input personal information (e.g., name, address, and phone number), input credit card information to pay for products, and chat with the "IKEA Customer Support Center."  Further, under the authority of Defendants, the LÄTTSKALAD is advertised, promoted, offered for sale, sold, and transported to customers across the United States, including throughout the Western District of Texas, through third-party websites such as www.amazon.com, which is also an interactive website.

36.     As discussed below, through these activities related to the LÄTTSKALAD avocado slicer, the Defendants infringe Helen of Troy's patents, violate Helen of Troy's trade dress rights, engage in unfair competition against Helen of Troy, are unjustly enriched at Helen of Troy's expense, and engage in misappropriation.

## COUNT I
### *(Infringement of U.S. Patent No. 8,726,799)*

37.     All of the above paragraphs are incorporated by reference as if fully restated herein.

38.     Upon information and belief, Defendants have infringed and will continue to infringe the '799 Patent either literally or under the doctrine of equivalents pursuant to 35 U.S.C. § 271 *et seq.* at least by selling, offering to sell, and/or importing the Accused Product, which is covered by at least one claim of the '799 Patent owned by Helen of Troy.  Defendants are also liable for contributory infringement or by inducing infringement.  With regard to such indirect infringement, the direct infringers include, but are not limited to, Defendants' affiliates, employees, and/or customers who make, use, sell, offer to sell, and/or import the Accused Product.

39.     For example, Defendants infringe at least claim 16 of the '799 Patent, literally or equivalently.

40.     Claim 16 recites:

An avocado pitting device comprising:

a handle having a first end portion and an opposite second end portion;

a first blade member coupled to the first end section of the handle, the first blade member configured to cut open the avocado to expose a pit of an avocado;

a second blade member coupled to the second end portion of the handle, the second blade member configured to slice the avocado; and

at least two spaced apart engagement members interposed between the first and second blade members, the engagement members projecting outwardly from the handle and toward each other such that the engagement members define a space for receiving the avocado pit, the engagement members being configured to pierce the avocado pit and retain the avocado pit against the handle allowing the pit to be removed from the avocado.

41.     The LÄTTSKALAD is "an avocado pitting device."  For example, upon clicking the "Product details" link at the Ikea.com webpage for the LÄTTSKALAD, the webpage describes the Accused Product as designed to "remove the seed" (a.k.a. the "pit") of an avocado. https://www.ikea.com/us/en/p/laettskalad-avocado-slicer-green-50464610/ (accessed April 8, 2021).  Moreover, according to the same webpage, "[a] quick twist of the stainless steel pitter is all that is needed to remove the avocado seed."  *Id.*  The webpage further shows the LÄTTSKALAD being used to "pit" an avocado:



42.     Furthermore, the LÄTTSKALAD includes "a handle having a first end portion and an opposite second end portion," as shown below in the image taken from the same website:



https://www.ikea.com/us/en/p/laettskalad-avocado-slicer-green-50464610/ (accessed April 8, 2021).

43.     As further shown in the image above, the LÄTTSKALAD has "a first blade member coupled to the first end section of the handle, the first blade member configured to cut open the avocado to expose a pit of an avocado."  Moreover, upon clicking the "Product details" link, the Ikea.com webpage for the LÄTTSKALAD product describes it as designed to "divide avocados" before removing the seed.  https://www.ikea.com/us/en/p/laettskalad-avocado-slicer-green-50464610/ (accessed April 8, 2021).

44.     An image of a LÄTTSKALAD product further shows a blade with a pointed end for cutting:



45.     The back of the packaging for the LÄTTSKALAD product from Amazon.com further shows the first blade being used to cut open an avocado:

 

https://www.amazon.co.uk/IKEA-504-646-10-Lattskalad-Avocado-Slicer/dp/B085HZNPFL

(accessed April 9, 2021) (images rotated 180 degrees for clarity).

46.     The LÄTTSKALAD also has "a second blade member coupled to the second end portion of the handle, the second blade member configured to slice the avocado."  As shown in the images of the LÄTTSKALAD above, the LÄTTSKALAD has a component with five blades, which is configured to slice the avocado.  The back of the packaging displayed on Amazon.com shows the fives blades being used to slice the avocado:



https://www.amazon.co.uk/IKEA-504-646-10-Lattskalad-Avocado-Slicer/dp/B085HZNPFL

(accessed April 9, 2021) (image rotated 180 degrees for clarity).

47.    The LÄTTSKALAD also has "at least two spaced apart engagement members interposed between the first and second blade members, the engagement members projecting outwardly from the handle and toward each other such that the engagement members define a space for receiving the avocado pit, the engagement members being configured to pierce the avocado pit and retain the avocado pit against the handle allowing the pit to be removed from the avocado."  In particular, the LÄTTSKALAD has four spaced apart engagement members between the first and second blade members that are used to pierce and remove the pit from the avocado, as shown on the back of the packaging from Amazon.com:



https://www.amazon.co.uk/IKEA-504-646-10-Lattskalad-Avocado-Slicer/dp/B085HZNPFL

(accessed April 9, 2021) (image rotated 180 degrees for clarity).

48.    Ikea.com similarly shows the four engagement members of the LÄTTSKALAD

interposed between the first and second blade members, with the engagement members projecting

outwardly from the handle and toward each other and being used to receive, pierce, retain, and

remove the avocado pit as claimed in the '799 Patent:



https://www.ikea.com/us/en/p/laettskalad-avocado-slicer-green-50464610/ (accessed April 8, 2021) (image rotated 180 degrees for clarity). According to the website, "[a] quick twist of the stainless steel pitter is all that is needed to remove the avocado seed." *Id.*

49.     Defendants' acts of infringement have been without express or implied license by Helen of Troy, are in violation of Helen of Troy's rights, and will continue unless enjoined by this Court.

50.     On information and belief, Defendants' infringement has been, and continues to be, deliberate, intentional, and willful.

51.     On information and belief, this is an exceptional case in view of, *inter alia*, Defendants' unlawful activities, including Defendants' deliberate, intentional and willful infringement.

52.     Helen of Troy has been, is being, and will continue to be injured by Defendants' conduct, and thus Helen of Troy is entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

53.     Defendants also have caused, are causing, and will continue to cause irreparable harm to Helen of Troy for which there is no adequate remedy at law and for which Helen of Troy is entitled to injunctive relief under at least 35 U.S.C. § 283.

## COUNT II
### (Infringement of U.S. Design Patent No. D675,488)

54.     All of the above paragraphs are incorporated by reference as if fully restated herein.

55.     The Defendants have infringed and upon information and belief will continue to infringe the '488 Patent under 35 U.S.C. § 271 *et seq.* at least by selling, offering to sell, and/or importing the LÄTTSKALAD product, which is covered by the claim of the '488 patent owned by Helen of Troy. Defendants are also liable for contributory infringement or by inducing infringement. With regard to such indirect infringement, the direct infringers include, but are not

limited to, Defendants' affiliates, employees, and/or customers who make, use, sell, offer to sell, and/or import the Accused Product.  Moreover, Defendants apply the patented design of the '488 Patent, or a colorable imitation thereof, to an article of manufacture, namely the LÄTTSKALAD, for the purpose of sale and also, upon information and belief, actually sell and expose for sale the LÄTTSKALAD.

56.     As shown below, the designs of the LÄTTSKALAD and the '488 Patent are substantially the same such that an ordinary observer, familiar with the prior art, would be deceived into believing that the LÄTTSKALAD (below, left) is the same as the patented design (below, right):

 

57.     Defendants' acts of infringement have been without express or implied license by Helen of Troy, are in violation of Helen of Troy's rights, and will continue unless enjoined by this Court.

58.     On information and belief, Defendants' infringement has been, and continues to be, deliberate, intentional, and willful.

59.     On information and belief, this is an exceptional case in view of, *inter alia*, Defendants' unlawful activities, including Defendants' deliberate, intentional and willful infringement.

60.     Helen of Troy has been, is being, and will continue to be injured by Defendants' conduct, and thus Helen of Troy is entitled to relief under at least 35 U.S.C. §§ 281, 284, 285, and 289.

61.     Defendants also have caused, are causing, and will continue to cause irreparable harm to Helen of Troy for which there is no adequate remedy at law and for which Helen of Troy is entitled to injunctive relief under at least 35 U.S.C. § 283.

## COUNT III
### *(Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))*

62.     All of the above paragraphs are incorporated by reference as if fully restated herein.

63.     Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Product violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing Helen of Troy's Trade Dress.  The trade dress of the Accused Product is confusingly similar to Helen of Troy's Trade Dress.  Defendants' use of Helen of Troy's Trade Dress in the Accused Product is likely to cause confusion as to the affiliation, connection, and/or association of Defendants with Helen of Troy and as to the origin, sponsorship, and/or approval of the Accused Product, at least by creating the false and misleading impression that the Accused Product is manufactured by, authorized by, or otherwise associated with Helen of Troy.

64.     Helen of Troy's Trade Dress is entitled to protection under the Lanham Act.  Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs.  Helen of Troy has

extensively and continuously promoted and used its Trade Dress in the United States.  Through

that extensive and continuous use, Helen of Troy's Trade Dress has become a well-known indicator

of the origin and quality of Helen of Troy's products, and Helen of Troy's Trade Dress has acquired

substantial secondary meaning in the marketplace.

65.     Moreover, Helen of Troy's Trade Dress acquired this secondary meaning before

Defendants commenced their unlawful use of Helen of Troy's Trade Dress in connection with the

Accused Product.  Helen of Troy used its Trade Dress extensively and continuously before

Defendants began advertising, promoting, selling, offering to sell, distributing, and/or importing

the LÄTTSKALAD.  And Helen of Troy's Trade Dress acquired secondary meaning in the United

States, in Texas generally, and in the Western District of Texas before Defendants commenced

unlawful use of Helen of Troy's Trade Dress.

66.     Defendants' use of Helen of Troy's Trade Dress has caused and, unless enjoined,

will continue to cause substantial and irreparable injury to Helen of Troy for which Helen of Troy

has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill

and reputation for quality associated with Helen of Troy's Trade Dress, with Helen of Troy, and

Helen of Troy's products.  Additionally, Defendants' use of Helen of Troy's Trade Dress has caused

injury to Helen of Troy in the form of lost sales because some customers that would have bought

Helen of Troy's OXO Avocado Slicer have bought and will buy Defendants' Accused Product

instead.

67.     On information and belief, Defendants' use of Helen of Troy's Trade Dress has been

intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of

the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example **Illustration

5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

68.     Helen of Troy is entitled to injunctive relief, and Helen of Troy is entitled to recover at least Defendants' profits, Helen of Troy's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT IV
### (Common Law Trade Dress Infringement)

69.     All of the above paragraphs are incorporated by reference as if fully restated herein.

70.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Product, in direct competition with Helen of Troy, constitute common law trade dress infringement, at least because Defendants' use of Helen of Troy's Trade Dress is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Accused Product, at least by creating the false and misleading impression that the Accused Product is manufactured by, authorized by, or otherwise associated with Helen of Troy.

71.     Helen of Troy's Trade Dress is entitled to protection under the common law.  Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs.  Helen of Troy has extensively and continuously promoted and used its Trade Dress in the United States and Texas. Through that extensive and continuous use, Helen of Troy's Trade Dress has become a well-known indicator of the origin and quality of Helen of Troy's products, and Helen of Troy's Trade Dress has acquired substantial secondary meaning in the marketplace.  Moreover, Helen of Troy's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Helen of Troy's Trade Dress in connection with the Accused Product.

72.     Defendants' use of Helen of Troy's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill

and reputation for quality associated with Helen of Troy's Trade Dress, with Helen of Troy, and Helen of Troy's products.  Additionally, Defendants' use of Helen of Troy's Trade Dress has caused injury to Helen of Troy in the form of lost sales because some customers that would have bought Helen of Troy's OXO Avocado Slicer have bought and will buy Defendants' Accused Product instead.

73.     On information and belief, Defendants' use of Helen of Troy's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example, **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

74.     Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Helen of Troy's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

### <u>COUNT V</u>
### *(Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*

75.     All of the above paragraphs are incorporated by reference as if fully restated herein.

76.     Based on the activities described above, including, for example, Defendants' advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Accused Product, Defendants have diluted, are diluting, and will likely continue to dilute Helen of Troy's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, is likely to cause, and has caused, dilution of Helen of Troy's famous trade dress, at least by eroding the public's exclusive identification of Helen of Troy's famous trade dress with Helen of Troy and Helen of Troy's products, by lessening the capacity of Helen of Troy's famous trade dress to identify and

distinguish Helen of Troy's products, by associating Helen of Troy's Trade Dress with products of inferior quality, and by impairing the distinctiveness of Helen of Troy's famous trade dress.

77.     Helen of Troy's Trade Dress is famous and is entitled to protection under the Lanham Act.   Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs. Helen of Troy's Trade Dress has acquired distinctiveness through Helen of Troy's extensive and continuous promotion and use of Helen of Troy's Trade Dress in the United States. Through that extensive and continuous use, Helen of Troy's Trade Dress has become a famous well-known indicator of the origin and quality of Helen of Troy's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of Helen of Troy and Helen of Troy's products. Helen of Troy's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Helen of Troy's Trade Dress became famous and acquired this secondary meaning before Defendants commenced its unlawful use of Helen of Troy's Trade Dress in connection with the Accused Product.

78.     Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Helen of Troy's Trade Dress, with Helen of Troy, and with Helen of Troy's OXO Avocado Slicer.

79.     On information and belief, Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of

the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example, **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

80.     Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**COUNT VI**
*(Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103)*

81.     All of the above paragraphs are incorporated by reference as if fully restated herein.

82.     Based on the activities described above, including, for example, Defendants' advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing the Accused Product, Defendants have diluted, are diluting, and will likely continue to dilute Helen of Troy's Trade Dress in violation of § 16.103 of the Texas Business & Commerce Code.  Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, is likely to cause, and has caused, dilution of Helen of Troy's famous trade dress at least by eroding the public's exclusive identification of Helen of Troy's famous trade dress with Helen of Troy, by lessening the capacity of Helen of Troy's famous trade dress to identify and distinguish Helen of Troy's products, by associating Helen of Troy's Trade Dress with products of inferior quality, and by impairing the distinctiveness of Helen of Troy's famous trade dress.

83.     Helen of Troy's Trade Dress is famous and is entitled to protection under Texas law. Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs.  Helen of Troy has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.  Through that extensive and continuous use, Helen of Troy's Trade Dress has become a famous and well-known indicator of the origin and quality of Helen of Troy's products

29

in the United States and in the State of Texas generally and in geographic areas in Texas, and Helen of Troy's Trade Dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of Helen of Troy and Helen of Troy's products. Helen of Troy's Trade Dress also has acquired substantial secondary meaning in the marketplace, including in Texas and in geographic areas in Texas. Moreover, Helen of Troy's Trade Dress became famous and acquired this secondary meaning before Defendants commenced its unlawful use of Helen of Troy's Trade Dress in connection with the Accused Product.

84.     Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Helen of Troy's Trade Dress, with Helen of Troy, and with Helen of Troy's OXO Avocado Slicer.

85.     On information and belief, Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example, **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

86.     Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

<u>**COUNT VII**</u>
*(Unfair Competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))*

87.     All of the above paragraphs are incorporated by reference as if fully restated herein.

88.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Product, in direct competition with Helen of Troy, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition at least because Defendants have obtained an unfair advantage as compared to Helen of Troy through Defendants' use of Helen of Troy's Trade Dress and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship and/or affiliation of Defendants' Accused Product, at least by creating the false and misleading impression that the Accused Product is manufactured by, authorized by, or otherwise associated with Helen of Troy.   Defendants' tortious activities have interfered with Helen of Troy's ability to conduct its business.

89.     Helen of Troy's Trade Dress is entitled to protection under the Lanham Act.   Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs.   Helen of Troy has extensively and continuously promoted and used its Trade Dress in the United States.   Through that extensive and continuous use, Helen of Troy's Trade Dress has become a well-known indicator of the origin and quality of Helen of Troy's products, and Helen of Troy's Trade Dress has acquired substantial secondary meaning in the marketplace.   Moreover, Helen of Troy's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Helen of Troy's Trade Dress in connection with the Accused Product.

90.     Defendants' use of Helen of Troy's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Helen of Troy's Trade Dress, with Helen of Troy, and Helen of Troy's products.  Additionally, Defendants' use of Helen of Troy's Trade Dress has caused injury to Helen of Troy in the form of lost sales because some customers that would have bought

Helen of Troy's OXO Avocado Slicer have bought and will buy Defendants' Accused Product instead.

91.     On information and belief, Defendants' use of Helen of Troy's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example, **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

92.     Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Defendants' profits, Helen of Troy's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**COUNT VIII**
*(Common Law Unfair Competition)*

93.     All of the above paragraphs are incorporated by reference as if fully restated herein.

94.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Product, in direct competition with Helen of Troy, constitute common law unfair competition, at least by palming off/passing off of Defendants' goods, by simulating Helen of Troy's Trade Dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the Accused Product, at least by creating the false and misleading impression that the Accused Product is manufactured by, authorized by, or otherwise associated with Helen of Troy.  Defendants' tortious activities have interfered with Helen of Troy's ability to conduct its business.

95.     Helen of Troy's Trade Dress is entitled to protection under the common law.  Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs and is inherently distinctive.  Helen of Troy has extensively and continuously promoted and used Helen of Troy's Trade Dress for years in the United States and Texas.  Through that extensive and continuous use,

Helen of Troy's Trade Dress has become a well-known indicator of the origin and quality of Helen of Troy's products, and Helen of Troy's Trade Dress has acquired substantial secondary meaning in the marketplace. Moreover, Helen of Troy's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Helen of Troy's Trade Dress in connection with the Accused Product.

96.     On information and belief, Defendants' use of Helen of Troy's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Helen of Troy's Trade Dress, with Helen of Troy, and Helen of Troy's products. Additionally, Defendants' use of Helen of Troy's Trade Dress has caused injury to Helen of Troy in the form of lost sales because some customers that would have bought Helen of Troy's OXO Avocado Slicer have bought and will buy Defendants' Accused Product instead.

97.     On information and belief, Defendants' use of Helen of Troy's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example, **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

98.     Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Helen of Troy's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## COUNT IX
### *(Unjust Enrichment)*

99.     All of the above paragraphs are incorporated by reference as if fully restated herein.

33

100.    Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Product, in direct competition with Helen of Troy, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at Helen of Troy's expense.  Defendants have also, *inter alia*, operated with an undue advantage.

101.    Helen of Troy created the products covered by Helen of Troy's Trade Dress through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used and is wrongfully using Helen of Troy's Trade Dress in competition with Helen of Troy, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Defendants have not been burdened with the expenses incurred by Helen of Troy, yet Defendants are obtaining the resulting benefits for its own business and products.

102.    Helen of Troy's Trade Dress is entitled to protection under the common law.  Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs.  Helen of Troy has extensively and continuously promoted and used its Trade Dress for years in the United States and Texas.  Through that extensive and continuous use, Helen of Troy's Trade Dress has become a well-known indicator of the origin and quality of Helen of Troy's products, and Helen of Troy's Trade Dress has acquired substantial secondary meaning in the marketplace.  Moreover, Helen of Troy's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Helen of Troy's Trade Dress and colorable imitations thereof in connection with the Accused Product.

103.    Defendants' use of Helen of Troy's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury

to the goodwill and reputation for quality associated with Helen of Troy's Trade Dress with Helen of Troy and Helen of Troy's products. Helen of Troy accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Defendants have wrongfully obtained and are wrongfully obtaining a benefit at Helen of Troy's expense by taking undue advantage and free-riding on Helen of Troy's efforts and investments, and enjoying the benefits of Helen of Troy's hard-earned goodwill and reputation. Additionally, Defendants' use of Helen of Troy's Trade Dress has unjustly taken sales from Helen of Troy because some customers that would have bought Helen of Troy's OXO Avocado Slicer have bought Defendants' Accused Product instead.

104.    On information and belief, Defendants' unjust enrichment at Helen of Troy's expense has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example, **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

105.    Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Defendants' profits.

## COUNT X
### *(Common Law Misappropriation)*

106.    All of the above paragraphs are incorporated by reference as if fully restated herein.

107.    Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Accused Product, in direct competition with Helen of Troy, constitute common law misappropriation.

108.    Helen of Troy created the OXO Avocado Slicer product covered by Helen of Troy's Trade Dress through extensive time, labor, effort, skill, and money. Defendants' have wrongfully used Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, in competition with Helen of Troy, and gained a special advantage

because Defendants were not burdened with the expenses incurred by Helen of Troy.  Defendants have commercially damaged Helen of Troy, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the Accused Product by creating the false and misleading impression that the Accused Product is manufactured by, authorized by, or otherwise associated with Helen of Troy, and by taking away sales that Helen of Troy would have made.

109.    Helen of Troy's Trade Dress is entitled to protection under the common law.  Helen of Troy's Trade Dress includes unique, distinctive, and non-functional designs.  Helen of Troy has extensively and continuously promoted and used Helen of Troy's Trade Dress for years in the United States and Texas.  Through that extensive and continuous use, Helen of Troy's Trade Dress has become a well-known indicator of the origin and quality of Helen of Troy's OXO Avocado Slicer product.  Helen of Troy's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Helen of Troy's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Helen of Troy's Trade Dress in connection with the Accused Product.

110.    Defendants' use of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Helen of Troy for which Helen of Troy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Helen of Troy's Trade Dress with Helen of Troy and Helen of Troy's products.  Moreover, as a result of their misappropriation, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Helen of Troy invested in establishing the

reputation and goodwill associated with Helen of Troy's Trade Dress with Helen of Troy and Helen of Troy's products.

111.    On information and belief, Defendants' misappropriation of Helen of Troy's Trade Dress, including through counterfeits, reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Helen of Troy's Trade Dress, as demonstrated in, for example **Illustration 5** above, and by Defendants' continuing disregard for Helen of Troy's rights.

112.    Helen of Troy is entitled to injunctive relief, and Helen of Troy is also entitled to recover at least Helen of Troy's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Helen of Troy prays for judgment and seeks relief against Defendants as follows:

(a)    Judgment that Defendants have (i) infringed the '799 Patent in violation of § 271 of Title 35 in the United States Code; (ii) infringed the '488 Patent in violation of § 271 of Title 35 in the United States Code; (iii) infringed Helen of Troy's Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (iv) violated Helen of Troy's common law rights in its Trade Dress; (v) diluted Helen of Troy's Trade Dress in violation of § 1125(c) of Title 15 of the United States Code; (vi) diluted Helen of Troy's Trade Dress in violation of Tex. Bus. & Com. Code § 16.103; (vii) engaged in unfair competition in violation of § 1125(a) of Title 15 in the United States Code; (viii) engaged in common law unfair competition; (ix) has

been unjustly enriched at Helen of Troy's expense; and (x) engaged in common law misappropriation;

(b)     Judgment that these wrongful activities by Defendants were willful;

(c)     A permanent injunction against Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, from committing further infringement of Helen of Troy's Trade Dress, further infringement of the '799 and '488 Patents, further acts of unfair competition, and further acts of unjust enrichment, including enjoining Defendants at least from selling, offering to sell, distributing, importing, or advertising the Accused Product (or any other products that use a copy, reproduction, or colorable imitation of the '799 and '488 Patents or Helen of Troy's Trade Dress), pursuant to at least 15 U.S.C. § 1116, 35 U.S.C. § 283, and Tex. Bus. Com. Code § 16.104;

(d)     An Order that Defendants pay Helen of Troy for all profits and damages resulting from Defendants' wrongful activities;

(e)     An Order barring importation of the Accused Product and/or colorable imitations thereof into the United States, and barring entry of the Accused Product and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

(f)     An award of Defendants' profits, Helen of Troy's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1116, and 1117, common law, and Tex. Bus. & Com. Code § 16.104;

(g)     An accounting and award of all recoverable damages sustained by Helen of Troy as the result of the acts of patent infringement by Defendant, but not less than a reasonable royalty under 35 U.S.C. § 284;

(h)     An award of enhanced damages pursuant to 35 U.S.C. § 284;

(i)     An award of attorneys' fees and costs pursuant to 35 U.S.C. § 285, or as otherwise permitted by law;

(j)     A determination of an ongoing royalty rate for future infringement of the Asserted Patents in the event that Defendants are not enjoined from continuing to use the Asserted Patents; and

(k)     For such other and further relief as the Court may deem just and proper.

Dated May 5, 2021                                    **AKIN GUMP STRAUSS HAUER & FELD LLP**

/s/ Daniel L. Moffett
DANIEL L. MOFFETT
State Bar No. 24051068
dmoffett@akingump.com
GEORGE A. L. ROSBROOK
State Bar No. 24070141
arosbrook@akingump.com
112 East Pecan Street, Suite 1010
San Antonio, Texas 78205-3732
Telephone: (210) 281-7000
Fax: (210) 224-2035

THOMAS W. LANDERS, IV
State Bar No. 24102057
*Admission to District Pending*
twlanders@akingump.com
HANNAH D. PRICE
State Bar No. 24116921
*Admission to District Pending*
hprice@akingump.com
1111 Louisiana Street, 44th Floor
Houston, Texas  77002
Telephone: (713) 220-5800
Fax:  (713) 236-0822

**ATTORNEYS FOR HELEN OF TROY
LIMITED**